IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TONIA M. REAVES, )
)
        Plaintiff, )
)
v. ) 1:13CV192
)
JP MORGAN CHASE BANK, N.A., )
)
        Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This breach of contract action comes before the Court on a Motion to Dismiss [Doc. #2] filed by Defendant JP Morgan Chase Bank, N.A. ("Defendant Chase") pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all claims asserted by Plaintiff Tonia M. Reaves ("Plaintiff" or "Plaintiff Reaves"). In the Complaint in this case, Plaintiff Reaves brings six causes of action in addition to a request for declaratory relief. Plaintiff's claims arise out of a 2010 Settlement Agreement between the parties, which settled a prior state court dispute involving alleged wrongful mortgage foreclosure proceedings. Plaintiff now contends that Defendant breached the Settlement Agreement and wrongfully threatened further foreclosure proceedings. In the Motion to Dismiss, Defendant contends that there has been no breach, and that Plaintiff's remaining claims are either barred by the Settlement Agreement or are attempts to recover in tort for a breach of contract claim. For the reasons set out below, the Court recommends that Defendant Chase's Motion to Dismiss be denied as to Plaintiff's breach of contract claim and request for declaratory relief, but otherwise be granted.

I.   FACTS, CLAIMS, AND PROCEDURAL HISTORY

The property underlying the present dispute is Plaintiff's residence in High Point, North Carolina. In the Complaint, Plaintiff alleges that she mortgaged the property with Flick Mortgage Investors, Inc. The mortgage was later assigned to Washington Mutual Savings and Loan, and was then purchased by and reassigned to Defendant Chase. Plaintiff further alleges that Defendant Chase wrongfully brought a foreclosure proceeding against her in Guilford County Superior Court in 2009. According to Plaintiff, the default underlying the foreclosure action arose because Defendant Chase incorrectly designated one of her monthly mortgage payments in 2009 and placed it into a holding account. Plaintiff alleges that she attempted to pay her monthly mortgage payments to Defendant in December 2009 and January 2010, but Defendant electronically refunded those payments on January 25, 2010. Plaintiff further states that upon the advice of the office of the Guilford County Clerk of Superior Court, she did not pay her monthly mortgage payments for February, March, and April 2010. The foreclosure action came on for hearing on May 21, 2010, during which Defendant's representative demanded payment of approximately $12,000.00 to prevent foreclosure, which Plaintiff paid. Her mortgage was reinstated.

Plaintiff alleges that in September 2011, Defendant again placed one of her monthly mortgage payments into a holding account and brought foreclosure proceedings. In November 2011, Plaintiff brought suit against Defendant in state court for return of money she alleged that she overpaid on May 21, 2010, and for fraud, negligent misrepresentation, and duress. In January 2012, Plaintiff entered into a settlement agreement and release with Defendant ("the

Agreement"). Paragraph 6 of the Agreement states that "[e]ach party shall bear its own costs, expenses and attorneys' fees incurred in connection with the Lawsuit, its settlement and this Agreement." (Agreement [Doc. #9-10] at 3.) Pursuant to the terms of the Agreement, the "Lawsuit" refers to Plaintiff's case against Defendant which was then pending. As part of the Agreement, Plaintiff released all of her claims against Defendant, which included all of Plaintiff's claims related to the 2009 and 2011 foreclosure proceedings.

After entering into the Agreement, Defendant Chase sent Plaintiff a letter in January 2012 demanding payment of her monthly mortgage plus approximately $3,000 for "Other Fees and Advances." Plaintiff inquired about these other fees and was told by Defendant that they were attorneys' fees relating to their prior foreclosure action. Plaintiff made her January mortgage payment. She alleges that she also made a payment on January 30, 2012, but that Defendant rejected and refunded that payment. Plaintiff states that she tried to make payments thereafter, but that Defendant rejected them while demanding payment of certain amounts plus the amount for "other fees." In September 2012, Defendant began contacting Plaintiff regarding initiating foreclosure proceedings. Plaintiff contends that in December 2012 Defendant contacted an assessor to go to Plaintiff's home to take photographs in anticipation of foreclosure.

Based upon these alleged facts, Plaintiff filed the present suit raising six causes of action: (1) breach of contract; (2) negligent misrepresentation; (3) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1; (4) negligent infliction of emotional distress; (5) punitive damages; and (6) reasonable reliance. Plaintiff also includes a request for declaratory relief under

state law.  Defendant argues that as to each of these claims, Plaintiff has failed to state a claim upon which relief may be granted, and that the entire action should be dismissed.

II.   DISCUSSION

   A.   Standard

A plaintiff fails to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

   B.   First Cause of Action: Breach of Contract

In her first cause of action, Plaintiff alleges that Defendant breached paragraph 6 of the Settlement Agreement. Paragraph 6 of the Agreement states that "[e]ach party shall bear its own costs, expenses and attorneys' fees incurred in connection with the Lawsuit, its settlement and this Agreement." (Agreement [Doc. #9-10] at 3.) Plaintiff alleges that Defendant breached paragraph 6 of the Agreement by using Plaintiff's mortgage account to collect attorneys' fees and by assessing late fees to which Defendant is not entitled. Defendant Chase argues that it did not breach the Agreement by attempting to collect attorneys' fees relating to the foreclosure. (Def's. Br. [Doc. #3] at 5-6.) According to Defendant Chase, paragraph 6 of the Agreement refers only to attorneys' fees related to Plaintiff's then-pending superior court action, and Defendant

4

contends that its prior foreclosure action was a separate and distinct action which was not affected by the Agreement. (Id.) In response, Plaintiff argues that her complaint in state superior court alleged that Defendant committed fraud by misrepresenting what she owed to Defendant and by asserting that it had a right to foreclose Plaintiff's mortgage. (Pl.'s Br. [Doc. #9] at 10.) Plaintiff therefore argues that the foreclosure action was related to "the Lawsuit, its settlement and this Agreement." The parties therefore disagree on the meaning of paragraph 6 of the Agreement. Defendant Chase also notes that attorneys' fees are mentioned in paragraph 3 of the Agreement, in addition to paragraph 6. In paragraph 3, Plaintiff released Defendant of any and all claims arising out of the facts, transactions, circumstances and occurrences relating to the Lawsuit. Defendant contends that it made no similar release in favor of Plaintiff.

The Agreement states that it "shall be governed by and interpreted in accordance with the laws of the State of North Carolina." (Agreement [Doc. #9-10] ¶ 9(b).) Under North Carolina law, contract language that is clear on its face is interpreted by the court as a matter of law; however, if the language is ambiguous and the intention of the parties is not clear, interpretation of the contract is for the jury. Int'l Paper Co. v. Corporex Constructors, Inc., 385 S.E.2d 553, 556 (N.C. Ct. App. 1989).

The well-pled facts at this stage are construed in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Defendant Chase does not dispute that Plaintiff's state court suit resulted from Defendant's managing of Plaintiff's mortgage account and Defendant's attempt to foreclose her mortgage. In addition, the Agreement settled all of Plaintiff's claims against Defendant, including all claims

5

related to the allegedly wrongful foreclosure proceedings in 2009 and 2011. Although Plaintiff released Defendant Chase from a wide variety of claims in paragraph 3 and there is no similar provision releasing Plaintiff, it remains that Defendant Chase waived attorneys' fees in paragraph 6, and paragraph 3 does not otherwise limit or clarify the interpretation of paragraph 6. Indeed, Paragraph 3 can be read as reflecting the broad scope of claims settled by and included within the Agreement, which lends support to Plaintiff's broad reading of paragraph 6 waiving attorney's fees incurred "in connection with the Lawsuit, its settlement and this Agreement." Having considered the parties' contentions, the Court concludes that the quoted language of paragraph 6 could be reasonably interpreted to pertain to the attorneys' fees of Plaintiff's superior court action only, or the language could be reasonably interpreted to cover attorneys' fees in both the superior court action and the underlying foreclosure action on which the superior court action was based. Therefore, it appears that the contract language is ambiguous and not capable of resolution on this motion to dismiss as a matter of law. Defendant Chase's Motion to Dismiss Plaintiff's breach of contract claim should be denied.

    C.    Second Cause of Action: Negligent Misrepresentation

Plaintiff's second claim is a tort claim for negligent misrepresentation. As the basis for this claim, Plaintiff alleges that she entered into the Agreement with Defendant regarding attorneys' fees, that Defendant agreed to bear its own attorneys' fees, and that Defendant "may have misrepresented" material facts including that it would not seek attorneys' fees against Plaintiff. Defendant argues that Plaintiff has not alleged that anything was actually misrepresented; has not alleged sufficient facts to show that it owes her a duty; and that Plaintiff

6

has not alleged that she could not have investigated and discovered the true facts by exercising reasonable diligence. (Def.'s Br. [Doc. #3] at 7.) Defendant also contends that this claim is an improper attempt by Plaintiff to transform her breach of contract claim into a tort claim. (Id. at 7-8.)

Defendant's argument that Plaintiff's negligent misrepresentation claim is an improper attempt to construct a tort claim from a breach of contract has merit. This claim is based upon the same facts as Plaintiff's breach of contract claim. In North Carolina, tort claims which arise out of a breach of contract are allowed only in "carefully circumscribed" circumstances. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998). Tort claims must be "identifiable" and distinct from the primary breach of contract claim. Id. The mere failure to carry out a promise in a contract, such as Defendant Chase failing to carry out its alleged promise in the Agreement not to seek attorneys' fees, does not support a tort action such as for fraud or negligent misrepresentation. See id. (citing Strum v. Exxon Co., 15 F.3d 327, 331 (4th Cir. 1994)). In Strum, the plaintiff attempted to establish a claim for gross negligence out of Exxon's performance on the contract. The Fourth Circuit "found it unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Strum, 15 F.3d at 333.

Plaintiff fails to offer any argument as to how her negligent misrepresentation claim is distinct from her breach of contract claim, and the Court finds no distinction. (Pl.'s Br. [Doc. #9] at 11-12.) It is therefore not an independent tort as required by Strum and Broussard and

7

should be dismissed on that basis. Defendant Chase's Motion to Dismiss as to Plaintiff's second cause of action should be granted.

D. Third Cause of Action: Unfair and Deceptive Trade Practices

Plaintiff's third cause of action is for unfair and deceptive trade practices under North Carolina law. Plaintiff's Complaint does not specify the conduct upon which this claim is based, but in her brief Plaintiff contends that Defendant "entered into an agreement with [Plaintiff], and failed to adhere to the provision of the contract requiring each party to bear its own costs and attorney's fees associated with the Lawsuit, settlement and the Agreement." (Pl.'s Br. [Doc. #9] at 12.) Therefore, this claim is also based upon Defendant's alleged breach of contract. Defendant Chase argues that this claim fails because it is simply an improper attempt to manufacture UDTP liability out of a contract dispute. (Def.'s Br. [Doc. #3] at 9. n.5.)

Broussard also involved a claim of unfair and deceptive trade practices. The court in that case warned that in North Carolina, "'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UTPA,] N.C.G.S. § 75-1.1.'" Broussard, 155 F.3d at 347 (quoting Branch Banking & Tr. Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992)). North Carolina requires a showing of "substantial aggravating circumstances" before such a claim may be established from a breach of contract. Id.

Plaintiff Reaves has not pointed to any facts which might establish the substantial aggravating circumstances necessary to support her UDTP claim, and the Court finds none.

Therefore, Defendant's Motion to Dismiss should be granted as to Plaintiff's third cause of action.[1]

E. Fourth Cause of Action: Negligent Infliction of Emotional Distress

In her Fourth Claim, Plaintiff alleges that Defendant negligently inflicted emotional distress upon her in managing her mortgage account, repeatedly placing her in a position to be foreclosed upon, and by breaching the Agreement. (Compl. [Doc. #4] at 9; Pl.'s Br. [Doc. #9] at 13.) Defendant Chase argues that to the extent this claim refers to prior alleged actions by Defendant Chase, those claims were all released by the Settlement Agreement. In addition, Defendant Chase argues that to the extent this claim is based on alleged breach of the Settlement Agreement, a breach of contract ordinarily does not constitute negligence. (Def.'s Br.[Doc. #3] at 9.) In that regard, under Strum, a plaintiff may pursue a claim for negligent infliction of emotional distress related to a breach of contract only where an independent tort is alleged. Strum, 15 F.3d at 330. In this case, Plaintiff has alleged that Defendant Chase breached its contract promises. Such a failure does not support Plaintiff's tort claim of negligent infliction of emotional distress, and this claim should be dismissed. See Broussard, 155 F.3d at 346-47; Strum, 15 F.3d at 330-31.[2]

---

[1] The Court notes that to the extent Plaintiff's Complaint includes allegations regarding Defendant Chase's prior foreclosure efforts, those claims were all released as part of the Settlement Agreement. As noted above, Plaintiff's Response Brief points only to Defendant's breach of the Settlement Agreement as the basis for the UDTP claim. If Plaintiff has some other separate basis for asserting this claim that was not released by the Settlement Agreement, Plaintiff remains free to seek leave to amend the Complaint to clarify the basis for the claim.

[2] The Court also notes that although Plaintiff alleges that she suffered "severe emotional distress and mental anguish," North Carolina courts require more specific allegations to establish a severe and disabling emotional or mental condition which is generally recognized and diagnosed by trained professionals. See Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990); Horne v. Cumberland County Hosp. Sys., 746 S.E. 2d 13, 20 (N.C. Ct. App. 2013).

F.  Fifth Cause of Action: Punitive Damages

Plaintiff alleges in her fifth cause of action that she is entitled to punitive damages pursuant to North Carolina General Statute § 1D-15. Plaintiff agrees in her response brief with Defendant Chase's assertion that her claim for punitive damages should not be considered as a separate cause of action. She requests that her claim for punitive damages be considered as part of her prayer for relief. (Pl.'s Br. [Doc. #9] at 17.) However, the only substantive cause of action that has been properly stated in the Complaint is Plaintiff's breach of contract claim. Under North Carolina law, "[p]unitive damages shall not be awarded against a person solely for breach of contract." N.C. Gen. Stat. § 1D-15(d). Therefore, Plaintiff's claim for punitive damages should be dismissed.

G.  Sixth Cause of Action: Reasonable Reliance

Plaintiff's sixth cause of action is labeled "Reasonable Reliance." Plaintiff alleges that she reasonably relied on Defendant's assurances that it would be responsible for its own attorneys' fees pursuant to the terms of the Agreement, and that Defendant's breach of the Agreement by charging attorney's fees to Plaintiff's mortgage account caused substantial hardship. In its Motion to Dismiss as to this claim, Defendant contends that reasonable reliance is an element of a fraud claim and not a stand-alone claim. Defendant also argues that Plaintiff has not pled a fraud claim with the specificity required by Federal Rule of Civil Procedure 9(b) and otherwise fails to state a claim upon which relief could be granted. (Def.'s Br. [Doc. #3] at 11-12.) In her Response, Plaintiff contends that this claim is "used in the context of promissory estoppel and not in the Defendant's assertion that [Plaintiff] was asserting fraud." (Pl.'s Br. [Doc. #9] at 16.)

10

However, to the extent Plaintiff intends to assert a claim for promissory estoppel, it is not clear what claim she seeks to raise beyond the breach of contract claim set out in Count One. Moreover, claims for promissory estoppel have "only been permitted in North Carolina for defensive relief and both North Carolina cases which recognized the doctrine involved the waiver of a preexisting right by a promisee." Home Elec. Co. of Lenoir, Inc. v. Hall and Underdown Heating and Air Conditioning Co., 358 S.E.2d 539, 542 (N.C. Ct. App. 1987); see also Dealers Supply Co., Inc. v. Cheil Indus., Inc., 348 F. Supp. 2d 579, 587 (M.D.N.C. 2004) (declining "to accept Plaintiff's invitation to apply promissory estoppel affirmatively" because "[t]o do so would be error"); Rice v. Vitalink Pharmacy Servs., Inc., 124 F. Supp. 2d 343, 347 (W.D.N.C. 2000) ("[P]romissory estoppel may not be used as an affirmative cause of action in this state."); Penguin Restoration, Inc. v. Nationwide Mut. Ins. Co., No. 5:13CV63BO, 2013 WL 4419355, at *2 (E.D.N.C. Aug. 15, 2013) (declining to apply promissory estoppel affirmatively). Therefore, even if Plaintiff's Complaint could be read as attempting to assert a claim for promissory estoppel, Plaintiff has failed to state a claim for promissory estoppel under state law, and Plaintiff's sixth cause of action should be dismissed.

      H.    Motion for Declaratory Relief

Plaintiff also moves for declaratory relief, including a judicial determination of her rights and duties under the Agreement. As part of this request, Plaintiff further alleges that because Defendant breached the Agreement, she is entitled to clear and free title to her property as part of a declaratory judgment. (Compl.[Doc. #4] ¶ 105.) Defendant argues that Plaintiff is not entitled to any such relief because her claim for breach of contract fails. However, as discussed

11

above, the Court is recommending that the contract claim not be dismissed at this time. In addition, to the extent Plaintiff requests a particular remedy, the Court construes that request as part of her prayer for relief, rather than a separate claim. Therefore, Defendant's motion to dismiss the request for declaratory relief should be denied.[3]

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant Chase's Motion to Dismiss [Doc. #2] be DENIED as to Plaintiff Reaves' breach of contract claim (Count One) and her related request for declaratory relief, but that the Motion to Dismiss be GRANTED as to the remaining claims.

This, the 2nd day of December, 2014.

                                               /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge

---

[3] Plaintiff's Response Brief outlines additional disputes on which she seeks declaratory relief, many of which appear to relate to the underlying claims released in the Settlement Agreement. However, the Court makes no determination as to those issues, and concludes only that declaratory relief is a potential type of relief that may be requested in connection with the breach of contract claim.